# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY L. HARTSHORN** | **CIVIL ACTION** |
| **versus** | **NO. 12-1359** |
| **WARDEN HOWARD PRINCE** | **SECTION: "C" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Gregory L. Hartshorn, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana. On September 17, 2007, he pleaded guilty to carjacking under Louisiana law. On that same date, he also pleaded guilty to being a second offender and was sentenced as such to a term of ten years imprisonment without benefit of probation, parole, or suspension of sentence.[1] After he was subsequently granted an out-of-time appeal, the Louisiana

---

[1] State Rec., Vol. I of III, transcript of September 17, 2007; State Rec., Vol. I of III, minute entry dated September 17, 2007; State Rec., Vol. I of III, guilty plea forms.

Fifth Circuit Court of Appeal affirmed his conviction and sentence on November 10, 2009.[2] The Louisiana Supreme Court then denied his related writ application on June 4, 2010.[3]

On or about June 18, 2010, petitioner filed with the state district court an application for post-conviction relief.[4] That application was denied on July 12, 2010.[5] On October 6, 2010, petitioner's related writ application was denied in part and granted in part by the Louisiana Fifth Circuit Court of Appeal, and the matter was remanded to the district court for additional proceedings.[6] The district court again denied relief on November 29, 2010.[7] Petitioner's related writ application was then likewise denied by the Louisiana Fifth Circuit Court of Appeal on February 1, 2011.[8] On November 4, 2011, the Louisiana Supreme Court also denied relief, thereby concluding the state post-conviction proceedings.[9]

---

[2] State v. Hartshorn, 25 So.3d 172 (La. App. 5th Cir. 2009) (No. 09-KA-47); State Rec., Vol. I of III.

[3] State v. Hartshorn, 38 So.3d 298 (La. 2010) (No. 2009-KO-2654); State Rec., Vol. I of III.

[4] State Rec., Vol. I of III.

[5] State Rec., Vol. I of III, Order dated July 12, 2010.

[6] State v. Hartshorn, No. 10-KH-681 (La. App. 5th Cir. Oct. 6, 2010); State Rec., Vol. I of III.

[7] State Rec., Vol. I of III, Order dated November 29, 2010.

[8] State v. Hartshorn, No. 10-KH-1087 (La. App. 5th Cir. Feb. 1, 2011); State Rec., Vol. I of III.

[9] State ex rel. Hartshorn v. State, 75 So.3d 915 (La. 2011) (No. 2010-KH-2508); State Rec., Vol. I of III.

On May 3, 2012, petitioner filed the instant federal application for *habeas corpus* relief claiming that he received ineffective assistance of counsel.[10] The state has filed a response conceding that the application is timely but arguing that the claims should be denied on the merits.[11] Petitioner has filed an objection to the state's response.[12]

I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

---

[10] Rec. Doc. 1.

[11] Rec. Doc. 12.

[12] Rec. Doc. 13.

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court

– 4 –

decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Petitioner's Claims

Petitioner claims that he received ineffective assistance of counsel. The United States Supreme Court has established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v.

McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the state post-conviction proceedings, the state district court denied petitioner's ineffective assistance of counsel claims on the merits, and his related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court. Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decisions rejecting petitioner's claims unless those decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

– 7 –

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether*

– 8 –

> *there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). This Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims for the following reasons.

In his first two claims, petitioner argues that his counsel was ineffective for failing to perform an adequate investigation. Specifically, petitioner claims that counsel failed to obtain video surveillance footage from the scene of the crime and failed to interview the sole eyewitness, i.e. John Romano, the man whose vehicle was stolen. The state district court rejected those claims, holding:

> Petitioner argues ineffective assistance of trial counsel. He argues that counsel was ineffective in failing to investigate by not interviewing the only witness that could establish a viable defense, by not interviewing the victim, by not obtaining video surveillance, and by providing erroneous and misleading information to the petitioner that surveillance tapes did not exist.
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. <u>State v. Legrand</u>, 2002-1462 (La. 12/3/03), 864 So.2d 89.
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the <u>Strickland</u>

test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in the instant application and argued in petitioner's memorandum in support.

Specifically, the petitioner claims that his attorney was ineffective by failing to properly investigate and by erroneously informing petitioner that no video surveillance of the incident was available. Petitioner contends that if evidence would have been obtained, through witness testimony and video surveillance, it would prove that he was guilty of theft of a car and not carjacking.

However, petitioner does not present any evidence supporting his claim. He does not present any evidence of video surveillance, or of witness testimony that he claims counsel should have obtained. The affidavits he attaches to his applications are not conclusive, and insufficient to prove that counsel was ineffective.

Under La. C.Cr.P. art. 930.2, the petitioner in application for post-conviction relief shall have the burden of proving that relief should be granted. The defendant has not presented any evidence in support of any of this claim. Petitioner's argument is merely speculative. The court finds as a matter of law that the petitioner has failed to meet his burden of proof or to prove a violation of the Strickland standard. He has not established that either prong of the Strickland standard has been violated.[13]

The Louisiana Fifth Circuit Court of Appeal likewise rejected the claims, holding:

> We find no error in the district court's findings that relator failed to meet his burden pursuant to LSA-C.Cr.P. art. 930.2 to prove ineffective assistance of trial counsel related to his claims that trial counsel failed to interview the victim, John Romano, and investigate

---

[13] State Rec., Vol. I of III, Order dated July 12, 2010.

his case, as well as erroneously misled him into believing there were no surveillance cameras, lied about the existence of video surveillance tapes, or failed to obtain those tapes in advance of trial. See, Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).[14]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[15]

As the state correctly notes in its response in this proceeding, "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. ... This includes all claims of ineffective assistance of counsel, *except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted). However, even if these claims are found not to have been waived by the guilty plea, petitioner still is not entitled to relief for the following reasons.

First, petitioner has not proven that counsel failed to conduct an investigation. On the contrary, plaintiff concedes that his attorney stated that he had in fact visited the gas station and was told there were no security cameras and that the cashier did not see the crime.[16] Although petitioner contends that these statements are "lies," that contention has not been proven. Petitioner's only "evidence" on this point proves nothing. That "evidence" consists of nothing more than affidavits[17] from Connie Beavers and Jodi Beavers (whose connection to petitioner is unclear)

---

[14] State v. Hartshorn, No. 10-KH-681 (La. App. 5th Cir. Oct. 6, 2010); State Rec., Vol. I of III.

[15] State *ex rel.* Hartshorn v. State, 75 So.3d 915 (La. 2011) (No. 2010-KH-2508); State Rec., Vol. I of III.

[16] Rec. Doc. 1, p. 20.

[17] The affidavits were attached to petitioner's post-conviction application and are contained in Volume I of the state court record.

stating that they telephoned unidentified persons at the gas station and asked if the station had surveillance cameras. The unidentified persons allegedly replied that there were such cameras. However, those telephone calls were made in 2009 and 2010; therefore, even if the rank hearsay statements in the affidavits are credited, they in no way prove that such cameras were in place in 2007 when this crime was committed. Similarly, as to the alleged failure to interview Romano, petitioner has presented no evidence whatsoever, such as an affidavit from either Romano or counsel, to establish that Romano was not in fact interviewed.

Further, *even if* counsel's investigation were found to be inadequate, that fact alone would not warrant relief. Rather, to prevail on a claim of inadequate investigation, a petitioner must point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, petitioner has not shown that further investigation would have revealed any such beneficial information. Even if security cameras were present as petitioner contends, he has not presented any evidence whatsoever that the security cameras in fact captured this incident or, if they did, that the resulting surveillance footage supported his version of the events. Likewise, he has provided no evidence, such an affidavit from Romano, establishing that he would have provided any information beneficial to the defense even if he had been interviewed. Without such evidence demonstrating that there was in fact exculpatory video surveillance footage or that Romano would have provided

beneficial information or testimony, petitioner's claims necessarily fail because he has not show that he was prejudiced by the allegedly inadequate investigation. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

The Court additionally notes that petitioner's claims also fail for another reason. As noted, for relief to be warranted, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995). Although petitioner contends that he would not have pleaded guilty but for these alleged defects in his counsel's performance, this Court finds that statement to be totally lacking in credibility for the following reasons.

Petitioner readily admits that he stole the vehicle in question.[18] Therefore, the gist of his claims is that, if counsel had vigorously investigated this case, there would have been a basis for arguing to the prosecutor that the carjacking charge should have been reduced to a lesser charge of theft. However, even if petitioner had been able to get the charge reduced to theft, it appears that he would have faced a ten-year sentence as a first offender and a *twenty-year* sentence as a second offender. La.Rev.Stat.Ann. §§ 14:67 and 15:529.1. Therefore, by agreeing to the instant plea bargain, he was able to secure for himself a much more lenient enhanced sentence than he would have faced *even if* he had been charged as he desired. In light of that fact, this Court finds utterly incredible any representation that petitioner would have rejected this extremely generous plea agreement.

---

[18] See, e.g., Rec. Doc. 1, pp. 20, 23, and 35.

In his third and final claim, petitioner argues that his counsel was ineffective for providing him with erroneous information concerning the terms of his enhanced sentence under the plea agreement. The state district court also rejected that claim, holding:

> [T]he petitioner claims that he was promised by his attorney that he would be eligible [for] goodtime and parole upon pleading guilty to the multiple bill. The court finds no merit to this claim. At the time of the plea, the State informed the court that the entire sentence was without benefits, quoting the statute for carjacking: "shall be imprisoned at hard labor for not less than two and not more than 20 years without the benefit of parole, probation or suspension of sentence. So the entire sentence is without benefit." (Boykin Transcript, 9/17/07, p. 4-5). The court then confirmed with the defendant that he understood that the sentence would be without benefits of parole, probation, or suspension of sentence, and the defendant responded that he understood.
> At sentencing, the court originally sentenced defendant to "10 years at hard labor, without benefit of parole, probation or suspension of sentence..." (Boykin Transcript, p. 8.). Upon sentencing the defendant under the multiple bill, the court vacated defendant's sentence and re-sentenced him, "as a multiple offender, second offender, to 10 years at hard labor, without benefit of parole, probation, or suspension of sentence..." (Boykin Transcript, p. 11.)
> Furthermore, the Plea of Guilty form, signed by the defendant, his attorney, and the court, clearly states that the sentence would be 10 years, without benefit of parole, probation, or suspension of sentence.
> The Boykin transcript and Plea of Guilty form, both located in the court record, clearly prove that defendant was informed of his sentence, and that his sentence would be 10 years without benefit of probation, parole or suspension of sentence under the multiple bill. The court finds no merit to this claim.[19]

---

[19] State Rec., Vol. I of III, Order dated November 29, 2010.

- 14 -

The Louisiana Fifth Circuit Court of Appeal found "no error" with respect to that ruling,[20] and the Louisiana Supreme Court then denied relief without assigning reasons.[21]

With respect to petitioner's allegation that he was unaware that his sentence would be served without benefit of parole, probation, or suspension of sentence, that allegation is simply untrue. As noted by the state court, both the transcript and the guilty plea form prove that petitioner was informed of that consequence of his pleas. The Court finds any representation by petitioner that he was advised differently by counsel and that he relied on such advice to be totally without credibility and unsupported by any evidence whatsoever in the record. Therefore, he cannot show the prejudice required to support his claim. See Beason v. Foti, 284 Fed. App'x 109 (5th Cir. 2008).

With respect to petitioner's allegation that he was unaware that he would be ineligible to earn "good time" credit to reduce his sentence, that issue is somewhat different. The record does not reflect what advice, if any, he was given with respect to "good time" eligibility. Nevertheless, it is petitioner's burden to prove that he was in fact given incorrect advice, and he has presented no evidence whatsoever in support of his self-serving allegations that the advice was incorrect on this point. This claim therefore fails for that reason alone.

Nevertheless, out of an abundance of caution, the Court further notes that *even if* counsel gave incorrect advice regarding eligibility to earn "good time" credit and *even if* such erroneous advice constituted deficient performance, once again relief is not warranted unless

---

[20] State v. Hartshorn, No. 10-KH-1087 (La. App. 5th Cir. Feb. 1, 2011); State Rec., Vol. I of III.

[21] State *ex rel.* Hartshorn v. State, 75 So.3d 915 (La. 2011) (No. 2010-KH-2508); State Rec., Vol. I of III.

petitioner can show that he was prejudiced by counsel's performance. As previously explained, petitioner must therefore meet his "burden of proof and persuasion to establish that it was in fact reasonably probable that but for the misadvice he would not have pleaded guilty and would have insisted on going to trial." Czere v. Butler, 833 F.2d 59, 63 (5th Cir. 1987) (internal quotation marks omitted). He has not met that burden. As a second offender charged with carjacking, petitioner faced a sentencing range of ten to forty years in prison if he went to trial and was convicted; however, as part of the plea agreement, he was guaranteed that he would be sentenced to the ten-year *minimum sentence*.[22] Therefore, despite his self-serving allegations to the contrary, the Court finds that it is not reasonably probable that petitioner would have rejected this extremely generous plea agreement. As a result, he has not established the prejudice required to support his claim.

In light of the foregoing, the undersigned finds that petitioner has failed to show that the state courts' decisions rejecting his ineffective assistance claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, these claims should be denied.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Gregory L. Hartshorn be **DISMISSED WITH PREJUDICE**.

---

[22] State Rec., Vol. I of III, transcript of September 17, 2007, p. 5; see also La.Rev.Stat.Ann. § 14:64.2 and 15:529.1.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this thirtieth day of July, 2012.

                                                **SALLY SHUSHAN**
                                                **UNITED STATES MAGISTRATE JUDGE**

---

[23] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.